JOHN W. HUBER, United States Attorney (#7226)
JARED C. BENNETT, Assistant United States Attorney (#9097)
MELINA SHIRALDI, Assistant United States Attorney (#13110)
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: jared.bennett@usdoj.gov, melina.shiraldi@usdoj.gov
Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRIENDS OF CEDAR MESA,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. DEPT. OF THE INTERIOR et al.,<br><br>    Defendants. | **MOTION TO DISMISS**<br><br>Case No. 4:19-cv-00013-DN-PK<br>Case No. 2:19-cv-00266-DN<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID BERNHARDT et al.,<br><br>    Defendants. | |

The Federal Defendants move to dismiss this action because this Court lacks subject matter jurisdiction. Therefore, as discussed further below, this Court should dismiss this action without prejudice.

## BACKGROUND

Under 30 U.S.C. § 226, the Bureau of Land Management conducted oil and gas lease sales in March and December 2018.[1] An "oil and gas lease, by itself, does not cause a change in the physical environment . . . [because] the lessee must submit site-specific proposals . . . [where] [e]ach action is subject to continuing NEPA review" before being able to disturb the surface of the land within the area of the oil and gas lease.[2] Although SUWA alleges that development of these leases will add many new structures and other damage to the environment, all of those activities are not authorized by the lease itself but may occur, if at all, only after the lessee receives additional approval from BLM following further environmental review. Therefore, the lease itself does not authorize surface disturbing activity.

As shown in Exhibit A, Friends of Cedar Mesa ("Friends") and Southern Utah Wilderness Alliance ("SUWA") each filed protests with BLM regarding the oil and gas leases sold at each above-referenced lease sale.[3] BLM issued the oil and gas leases over Plaintiffs' respective protests.[4] Thereafter, Plaintiffs each filed a lawsuit challenging the issuance of the oil and gas leases shown in Exhibit A. Friends challenged the March 2018 leases but not the December 2018 leases shown in Exhibit A. Conversely, SUWA challenged only a few of the March 2018 leases and all of December 2018 leases shown in Exhibit A.

---

[1] ECF No. 26 ¶¶ 57-74; ECF No. 32 ¶ 97.

[2] *Park Cnty. Res. Council, Inc. v. U.S. Dep't of Agric.*, 817 F.2d 609, 622 (10th Cir. 1987) overruled on other grounds by *Marsh v. Ore. Nat. Res. Council*, 490 U.S. 360, 385 (1989).

[3] ECF No. 26 ¶¶ 65, 71; ECF No. 32 ¶ 92.

[4] ECF No. 26 Attachment 1; ECF No. 32 ¶ 100.

Plaintiffs' respective lawsuits sought judicial review of the above-mentioned leasing decisions pursuant to the Administrative Procedure Act ("APA").[5] Specifically, Friends' lawsuit complained that BLM's leasing decisions were arbitrary and capricious under the APA because BLM failed to comply with its obligations under the National Environmental Policy Act ("NEPA"),[6] the National Historic Preservation Act ("NHPA"),[7] and the Endangered Species Act ("ESA").[8] SUWA's lawsuit complained that BLM's leasing decision was arbitrary and capricious because it failed to comply with NEPA and the Federal Land Policy and Management Act ("FLPMA").[9]

In addition to Plaintiffs' actions in this Court, another conservation group, WildEarth Guardians, challenged the March 2018 leases in Exhibit A before the Interior Board of Land Appeals ("IBLA").[10] The IBLA is part of the Office of Hearings and Appeals and determines, "as fully and finally as might the Secretary [of the Interior],"[11] "decisions rendered by Departmental officials relating to . . . the use and disposition of public lands and their resources . . . ."[12] The IBLA exercises de novo review over oil and gas leasing decisions.[13] Thus, "[a]

---

[5] 5 U.S.C. §§ 551 to 706; ECF No. 26 ¶ 13; ECF No. 32 ¶ 10.
[6] 42 U.S.C. §§ 4321 to 4333.
[7] 54 U.S.C. §§ 300101 to 306131.
[8] 16 U.S.C. §§ 1531 to 1541; ECF No. 32 ¶¶ 147-69.
[9] 43 U.S.C. §§ 1701 to 1784; ECF No. 26 ¶¶ 75-93.
[10] *WildEarth Guardians v. Bureau of Land Mgmt.*, IBLA 2018-158, attached hereto as Exhibit B.
[11] 43 C.F.R. § 4.1
[12] 43 C.F.R.§ 4.1(b)(3).
[13] *See, e.g., Wyoming Outdoor Council*, 160 IBLA 387, 388 (2004).

decision of the [IBLA] shall constitute final agency action . . . ."[14]  Upon appeal of a BLM decision to the IBLA, BLM cannot alter its decision on the matter unless the IBLA returns jurisdiction to BLM.[15]

On March 19, 2019, the United States District Court for the District of Columbia decided *WildEarth Guardians v. Zinke*,[16] wherein it ruled that BLM had failed to quantify greenhouse gas emissions that were the reasonably foreseeable effect of oil and gas development on public land in Wyoming.[17]  After having time to analyze the *Zinke* court's decision and to compare its reasoning with the environmental analyses supporting the March and December 2018 oil and gas lease sales in this action, BLM determined that it needed to suspend the December 2018 leases and request a return of jurisdiction from the IBLA to suspend the March 2018 leases.[18]

BLM moved the IBLA for a return of jurisdiction so that BLM can suspend the March 2018 leases.[19]  WildEarth Guardians has opposed BLM's motion.[20]  The IBLA has yet to rule.

---

[14] 43 C.F.R. § 4.403.

[15] *See, e.g.*, *McMurray Oil Co.*, 153 IBLA 391, 393 (2000) (holding that BLM could not alter the BLM's decision approving an oil and gas project while decision was before the IBLA).

[16] 368 F.Supp. 3d 41 (D.D.C. 2019).

[17] *Id.* at 67-71.

[18] Exhibit C.  Each lease was suspended by a decision that used the same wording as the example attached hereto.  Therefore, only one suspension decision is attached to avoid unnecessary duplication.

[19] Exhibit B.

[20] Exhibit B.

In addition to seeking remand of the March 2018 leases from the IBLA, BLM issued suspension decisions for the December 2018 leases.[21]  According to BLM's suspension decisions, BLM will conduct further NEPA analysis.  Thereafter, BLM will issue a new decision as to each lease that may: (1) cancel the lease; (2) modify it; or (3) lift the suspension without modification.[22]  If the IBLA returns jurisdiction over the March 2018 leases to BLM, will suspend the leases in the same manner as the December 2018 leases.

Given these jurisdictional facts, the Federal Defendants move to dismiss for want of subject matter jurisdiction for the following reasons.  First, Congress limited judicial review to only "final agency action."[23]  Because the Secretary of the Interior, through the IBLA, retains the authority to cancel or modify the March 2018 leases, they are not "final agency action." Consequently, Congress has not waived sovereign immunity, which requires dismissal of Plaintiffs' challenges to the March 2018 leases.  Second, as to the suspended December 2018 leases—and the March 2018 leases once they are returned from the IBLA and suspended—this Court lacks jurisdiction because they are moot.  Consequently, there is nothing left to do but dismiss this action and allow Plaintiffs to file a future action challenging the lifting of the suspension on any of the leases.  Thus, this action should be dismissed without prejudice.

---

[21] Exhibit C.

[22] Exhibit C.

[23] 5 U.S.C. § 704.

**ARGUMENT**

I. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE MARCH 2018 LEASES ARE NOT FINAL AGENCY ACTION.

This Court lacks subject matter jurisdiction to review the March 2018 leases that Plaintiffs have challenged because Congress has not waived the United States sovereign immunity under the APA. As a general rule, "'the United States, as sovereign, is immune from suit save as it consents to be sued.'"[24] The United States' consent to be sued is "a prerequisite for jurisdiction."[25] In order for the United States to waive this sovereign immunity, the waiver "'cannot be implied but must be unequivocally expressed.'"[26]

The APA provides a limited waiver of sovereign immunity for judicial review of "final agency action."[27] Establishing "final agency action" is a jurisdictional prerequisite under the APA.[28] Plaintiffs bear the burden of establishing a waiver of sovereign immunity.[29]

Plaintiffs cannot carry their burden to prove final agency action because where, as here, a group has pursued an optional appeal to the IBLA of the March 2018 leases, there is no final

---

[24] *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

[25] *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

[26] *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

[27] 5 U.S.C. § 704.

[28] *Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998).

[29] *Mitchell*, 463 U.S. at 212.

6

agency action. *Acura of Bellevue v. Reich* nicely illustrates this principle.[30] In *Reich*, 49 car dealerships challenged a child-labor decision of the Department of Labor.[31] The dealerships filed an appeal with the Administrative Law Judges ("ALJs") at the Department of Labor, which was not a jurisdictional prerequisite to filing suit in federal court; it was a purely voluntary appeal.[32] In addition to challenging the Department of Labor's decision before the ALJs, the dealerships also filed an action in federal district court under the APA seeking judicial review of the Department of Labor's decision.[33] The district court dismissed the court action because filing an administrative action with the ALJs "rendered that decision *nonfinal* for purposes of judicial review."[34]

On appeal, the Court of Appeals for the Ninth Circuit affirmed.[35] The court reasoned that the APA allows judicial review of only "'final agency action.'"[36] Because the ALJs had de novo review authority over the Department of Labor's decision and, therefore could modify or reverse the decisions, "[i]t follows that an intra-agency appeal to an ALJ, who has de novo review of the [Department's] decision, must similarly render the [Department's] decision nonfinal under the

---

[30] 90 F.3d 1403, 1407 (9th Cir. 1996).

[31] *Id.* at 1405.

[32] *Id.*

[33] *Id.*

[34] *Id.* (emphasis in original).

[35] *Id.*

[36] *Id.* at 1407 (quoting 5 U.S.C. § 704).

APA."[37]  Thus, optional appeals to an intra-agency appellate board with the authority to modify or cancel the initial agency decision is not "final agency action" under the APA.

Given the foregoing authority, Plaintiffs' challenges to the March 2018 leases should be dismissed because they are not final agency action.  As in *Reich*, the March 2018 leases in this action are currently under review by the Administrative Judges of the IBLA.  The IBLA exercises de novo review over BLM's leasing decision[38] and exercises the plenary authority of the Secretary of the Interior to affirm, modify, or cancel the leases pending before it.[39]  Consequently, Plaintiffs cannot show that the March 2018 leases are "final agency action." Because Plaintiffs cannot meet this jurisdictional prerequisite to avail themselves of the APA's limited waiver of sovereign immunity, this Court should dismiss their challenges to the March 2018 leases for want of subject matter jurisdiction.

II.     SUWA's CHALLENGES TO THE DECEMBER 2018 LEASES ARE MOOT.[40]

BLM's lease suspension decision moots SUWA's challenges to the December 2018 leases.  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[41]  A court cannot assert subject matter

---

[37] *Id.* at 1408.

[38] *Wyoming Outdoor Council*, 160 IBLA 387, 388 (2004).

[39] 43 C.F.R. § 4.1.

[40] The analysis in Section II will apply to the March 2018 leases assuming that the IBLA returns jurisdiction to BLM and BLM suspends them upon remand during the pendency of this motion.

[41] *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

jurisdiction over a moot case.[42] "A case is moot when it is impossible for the court to grant any effectual relief whatever to a prevailing party."[43] Thus, "the core question in a mootness inquiry is whether granting a present determination of the issues offered . . . will have some effect in the real world."[44]

By illustration, in *Southern Utah Wilderness Alliance v. United States Department of the Interior*,[45] BLM re-evaluated its decision to issue oil and gas leases after Judge Kimball decided an oil and gas leasing action against BLM in a separate case.[46] Based on that action, BLM decided to suspend the leases and to conduct additional environmental analysis before deciding whether to cancel the leases, modify them, or to lift the suspension without modification.[47] After all of the leases were suspended, BLM moved to dismiss the action as moot, which SUWA opposed.[48] Judge Kimball rejected SUWA's arguments and dismissed the action because "Plaintiffs are not entitled to any relief under NEPA beyond that which BLM's suspension decision has already afforded. [BLM's suspension decision] annulled any 'irreversible and

---

[42] *See, e.g., In re BCD Corp.*,119 F.3d 852, 856 (10th Cir. 1997).

[43] *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1254 (10th Cir. 2001) (quotations and citations omitted).

[44] *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999) (citations and quotations omitted).

[45] 2007 WL 2220525 (D. Utah 2007).

[46] *Id.* at *1.

[47] *Id.*

[48] *Id.* at **1-2.

irretrievable commitment of resources' from which Plaintiffs claim to have suffered harm under NEPA."[49]  Consequently, SUWA's challenge to the suspended oil and gas leases was moot.[50]

Similarly, SUWA cannot obtain any further real-world relief by litigating whether the December 2018 leases violated NEPA or FLPMA.  If SUWA were to have litigated its claims and prevailed, the available relief is for this Court to "hold unlawful and set aside" BLM's decision to issue the leases.[51]  This is essentially what BLM has done by suspending the leases and committing to complete further environmental review.  Given that SUWA has received "all the relief the federal court could have given [them]," the matter is moot.[52]

Despite having received all the effective relief to which they would have been entitled had they prevailed on their claims, the Federal Defendants anticipate that SUWA may argue that this Court should nonetheless review the suspended leases under at least one of the four exceptions to the mootness doctrine.  A court will find that an action falls within one of the exceptions to the mootness doctrine if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to

---

[49] *Id.* *2.

[50] *See also S. Utah Wilderness All. v. U.S. Dep't of the Interior*, 250 F.Supp. 3d 1068, 1087 (D. Utah 2017) (holding that BLM's suspension of previously approved applications for permit to drill were moot because BLM would issue a new decision after further environmental analysis canceling the APD, modifying it, or lifting the suspension without modification).

[51] 5 U.S.C. § 706(2).

[52] *Wyoming v. U.S. Dep't of the Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009) (citations and quotations omitted).

resume it at any time; or (4) it is a properly certified class action suit."[53]  Given that this is not a class action lawsuit, only the first three exceptions are addressed below.

### A. The Secondary or Collateral Injury Exception Does Not Apply Here.

SUWA cannot claim to have suffered from any collateral or secondary injuries.  SUWA's primary asserted injury was that the leases would adversely impact their members' ability to recreate, view wildlife, and appreciate cultural and aesthetic resources.[54]  To vindicate these interests, SUWA asked this Court to rescind the leases and enjoin reissuance until BLM has taken the appropriate environmental review.[55]  BLM has essentially done that.  BLM suspended the leases and committed to complete further environmental review prior to issuing a new decision covering each lease.  Therefore, this mootness exception does not apply.

### B. SUWA's Claims are Not Capable of Repetition Yet Evading Review.

The approvals of the leases are not capable of repetition yet evading review because BLM has committed to issuing new decisions for each lease, and there will be ample time following such decisions for SUWA to seek judicial review of such decisions should it choose to do so.  The "capable of repetition yet evading review" exception to the mootness rule is a "narrow" one "that should be applied in exceptional situations."[56]  To establish these exceptional circumstances, SUWA must show that: (1) the duration of the challenged action is too short to be

---

[53] *Riley v. Immigration & Naturalization Serv.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (citations omitted).

[54] ECF No. 26 ¶ 16; ECF No. 32 ¶ 16.

[55] ECF No. 26 at 26; ECF No. 32 at 40.

[56] *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012) ("*Wyoming II*") (citations and quotations omitted).

fully litigated prior to its cessation or expiration; <u>and</u> (2) there is a reasonable expectation that SUWA will be subjected to the same action again.[57] SUWA cannot meet either requirement.

First, as mentioned above, SUWA will have ample time to challenge the new decisions that BLM will issue on the leases following its supplemental environmental review. The primary term for an oil and gas lease is ten years,[58] which exceeds the six-year statute of limitations for claims under the APA.[59] Six years is more than a sufficient time by which to challenge a new decision covering each of the leases.[60] Thus, on this basis alone, the capable of repetition yet evading review exception does not apply.

Second, SUWA cannot have a reasonable expectation of being subject to the same action on which their present claims are based (i.e., the alleged approval of the leases without sufficient environmental review) because BLM has suspended the leases to complete further review. Consequently, even if, after further environmental review, BLM were to simply lift the current suspensions without modifying the conditions of approval specified in the prior approval, the leases would still not suffer from the same alleged procedural flaws about which SUWA now complains. "Thus, any determination [this Court] might make as to the procedural foundations

---

[57] *Id.*

[58] 30 U.S.C. § 226(e).

[59] *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1245 (10th Cir. 2012) (stating that the limitations period for APA claims is six years of the claim's accrual).

[60] *See, e.g.*, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (holding that agency decisions that expire in less than two years may be capable of repetition yet evading review).

of the old [decision] 'would be wholly without effect in the real world.'"[61]  Therefore, SUWA cannot establish the extraordinary circumstances necessary to invoke the capable of repetition yet evading review exception to the mootness doctrine.

        C.   <u>The Voluntary Cessation Exception Does Not Apply Here, Especially Where an Agency Decision is Involved.</u>

Where, as here, BLM has suspended the December 2018 leases that SUWA challenges, SUWA may argue that the voluntary cessation exception to the mootness doctrine applies. However, this assertion would be erroneous.  Where, as here, a government agency—as opposed to a private party—has voluntarily ceased going forward with the challenged action, courts will refuse to apply the voluntary cessation exception if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[62]  When applied to the voluntary cessation of government actions, these rules are much less stringent than when applied to private parties.[63]  The Federal Defendants can establish both elements here.

    First, there can be no reasonable expectation that a future decision from BLM will suffer from the same alleged flaws about which SUWA now complains.  SUWA complains that the

---

[61] *Wyoming II*, 674 F.3d at 1230 (citation omitted).

[62] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (recognizing that the voluntary cessation exception to the mootness doctrine is not applied nearly as strictly against government agencies as against private parties and holding moot agency action that was voluntarily terminated); *S. Utah Wilderness All.*, 250 F.Supp. 3d at 1088 (recognizing that burden to avoid voluntary cessation exception "often falls more lightly on government actors").

[63] *Rio Grande*, 601 F.3d at 1115.

December 2018 leases were not supported by adequate environmental analysis. However, BLM has suspended the leases and committed to completing further environmental review. Given the NEPA review that will occur and the fact that the administrative record will change—and so may the leasing decisions—reviewing the leases based on the current administrative record is a waste of judicial resources until new decisions are issued. Thus, there is no reasonable basis to find that BLM's future decisions regarding the leases may suffer from the same alleged flaws.

Second, BLM's suspension of the leases has completely and irrevocably eradicated the effects of the alleged violation. The effects of the alleged violation were that the oil and gas leases were issued without adequate NEPA analysis and compliance with FLPMA. However, neither a NEPA nor a FLPMA violation can exist now that BLM has suspended the leases. Indeed, if there is no active lease, no lessee can do anything that would disturb the resources about which SUWA is concerned. And, if, after further environmental review, BLM makes a future decision lifting the suspension of the leases, SUWA can challenge those decisions based on a new administrative record. Thus, the voluntary cessation exception is inapplicable, and SUWA's claims should be dismissed as moot.

## CONCLUSION

For the reasons stated above, this Court should dismiss this action for want of subject matter jurisdiction.

DATED this 8th day of August 2019.

                JOHN W. HUBER
                United States Attorney

                /s/ Jared C. Bennett
                JARED C. BENNETT
                Assistant United States Attorney

OF COUNSEL:

ELIZABETH SCHULTE
Office of the Regional Solicitor
Bennett Federal Building
125 South State Street
Salt Lake City, UT 84138
elizabeth.schulte@sol.doi.gov