IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRIENDS OF CEDAR MESA,<br><br>                Plaintiff,<br><br>v.<br><br>U.S. DEPT. OF THE INTERIOR et al.,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS** |
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>                Plaintiff,<br><br>v.<br><br>DAVID BERNHARDT et al.,<br><br>                Defendants. | Case No. 4:19-cv-00013-DN-PK<br><br>District Judge David Nuffer |

       This consolidated action arises from the Bureau of Land Management's ("BLM") March and December 2018 sale of oil and gas leases located in southeastern Utah.[1] Plaintiffs allege that the sale was arbitrary and capricious, an abuse of discretion, and contrary to law because the BLM failed to conduct proper environmental and historical analyses, and failed to provide appropriate opportunity for notice and comment.[2] Defendants seek dismissal of Plaintiffs' claims

---

[1] First Amended Complaint for Declaratory and Injunctive Relief ("FCM Complaint") ¶ 1 at 2, docket no. 32, filed May 31, 2019; Complaint for Declaratory and Injunctive Relief ("SUWA Complaint") ¶ 1 at 1-2, docket no. 26, filed May 6, 2019.

[2] FCM Complaint ¶¶ 147-169 at 35-40; SUWA Complaint ¶¶ 75-93 at 22-25.

arguing that the claims are moot because the BLM suspended the leases to perform additional environmental analysis and will issue new final leasing decisions.[3]

Because no substantial controversy of sufficient immediacy and reality exists, Plaintiffs' claims are moot. And because the violations alleged in Plaintiffs' claims cannot reasonably be expected to start up again, and events have completely and irrevocably eradicated the effect of the alleged violations, the voluntary cessation exception to the mootness doctrine does not apply. Therefore, Defendants' Motion to Dismiss[4] is GRANTED.

## BACKGROUND

In March 2018, the BLM sold 43 oil and gas leases located in southeastern Utah (the "March 2018 Leases").[5] The BLM later sold 15 additional oil and gas leases in the same region in December 2018 (the "December 2018 Leases").[6] The leased parcels are alleged to contain a high concentration of archaeological sites including "cliff dwellings, pueblos, kivas, petroglyphs and pictograph panels, ancient roads, and Chaco-era (circa 900-1150 A.D.) 'great houses.'"[7] The parcels are also alleged to possess natural features that support several threatened and endangered wildlife species, including the Mexican spotted owl, Southwestern willow flycatcher, and Yellow-bill cuckoo.[8] Additionally, several of the parcels are alleged to connect to the San Juan River, which is home for numerous other endangered species.[9]

---

[3] Motion to Dismiss, docket no. 40, filed Aug. 8, 2019.

[4] *Id*.

[5] FCM Complaint ¶ 97 at 24.

[6] SUWA Complaint ¶ 9 at 5. Collectively the March 2018 Leases and the December 2018 Leases are referred to as the "March and December 2018 Leases."

[7] *Id*. ¶ 4 at 2.

[8] FCM Complain ¶ 70 at 19.

[9] *Id*.

On February 6, 2019, Plaintiff Friends of Cedar Mesa ("FCM") filed a complaint challenging the BLM's decision to sale the March 2018 Leases.[10] FCM subsequently filed an amended complaint, which asserts four causes of action: (1) violation of the National Historic Preservation Act ("NHPA") and the Administrative Procedures Act ("APA");[11] (2) violation of the National Environmental Policy Act ("NEPA") and APA for failure to prepare an environmental impact statement ("EIS");[12] (3) violation of NEPA and APA for preparation of an unlawful environmental assessment ("EA");[13] and (4) violation of the Endangered Species Act ("ESA") and APA for failure to consult.[14]

On April 19, 2019, Plaintiff Southern Utah Wilderness Alliance ("SUWA") initiated a separate action challenging the BLM's decision to sell 20 of the March 2018 Leases and all of the December 2018 Leases.[15] SUWA's Complaint asserts three causes of action: (1) violation of NEPA for failure to take a "hard look" at the indirect effects of the March and December 2018 Leases;[16] (2) violation of NEPA for failure to analyze cumulative impacts of oil and gas leasing and development;[17] and (3) violation of NEPA and the Federal Land Policy and Management Act ("FLPMA") for unlawful restrictions on public participation.[18] The FCM and SUWA cases were consolidated on May 6, 2019.[19]

---

[10] Complaint for Declaratory and Injunctive Relief, docket no. 2, filed Feb. 6, 2019.

[11] FCM Complaint ¶¶ 147-52 at 36-37.

[12] *Id.* ¶¶ 153-57 at 37-38.

[13] *Id.* ¶¶ 158-64 at 38-39.

[14] *Id.* ¶¶ 165-69 at 39-40.

[15] SUWA Complaint ¶¶ 75-93 at 22-25.

[16] *Id.* ¶¶ 75-82 at 22-23.

[17] *Id.* ¶¶ 83-89 at 23-24.

[18] *Id.* ¶¶ 90-93 at 24-25.

[19] Order Granting Motion to Consolidate Related Cases, docket no. 25, filed May 6, 2019.

Prior to the filing of the FCM and SUWA cases, on November 8, 2018, WildEarth Guardians, a conservation group that is not a party to this consolidated action, appealed the BLM's decision to issue the March 2018 Leases to the Interior Board of Land Appeals ("IBLA").[20] The BLM then petitioned the IBLA to return jurisdiction of the March 2018 Leases,[21] which the IBLA granted.[22] The BLM subsequently suspended the March 2018 Leases until further environmental analysis under NEPA can be conducted.[23]

Additionally, on July 19, 2019, in *WildEarth Guardians v. Zinke*,[24] the District Court for the District of Columbia determined that the BLM did not adequately assess potential impacts of greenhouse gas emissions and climate change under NEPA for oil and gas leases sold in Wyoming. In light of this decision, the BLM voluntarily suspended the December 2018 Leases until further environmental analysis under NEPA can be conducted.[25]

Defendants argue that because the BLM suspended the March and December 2018 Leases and will issue new final leasing decisions, Plaintiffs' claims are moot and should be dismissed for lack of subject matter jurisdiction.[26]

---

[20] Statement of Reasons, *WildEarth Guardians v. Bureau of Land Mgmt.*, IBLA 2018-158, docket no. 40-2, filed Aug. 08, 2019. The IBLA reviews the BLM's leasing decisions de novo. *Wyoming Outdoor Council*, 160 IBLA 387, 388 (2004). And the IBLA can affirm, modify, or terminate the leases. 43 C.F.R. § 4.1.

[21] BLM Motion to Return Jurisdiction, *WildEarth Guardians v. Bureau of Land Mgmt.*, IBLA 2018-158, docket no. 40-2, filed Aug. 08, 2019

[22] Motion to Set Aside and Remand Granted ("IBLA Remand"), *WildEarth Guardians v. Bureau of Land Mgmt.*, IBLA 2018-158 (Oct. 3, 2019).

[23] Amended Declaration of Kent Hoffman ("Hoffman Declaration") ¶ 3, docket no. 49-2, filed Nov. 21, 2019.

[24] No. 1:16-cv-01724-RC, 2019 WL 3253685 (D. D.C. July 19, 2019).

[25] Hoffman Declaration ¶ 3.

[26] Motion to Dismiss at 8-14. Defendants also initially argued that the March 2018 Leases are not a judicially reviewable final agency action because of the pending IBLA decision. *Id*. at 6-8. This argument is now moot because the IBLA returned jurisdiction of the March 2018 Leases to the BLM. IBLA Remand.

## DISCUSSION

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."[27] "Once a controversy ceases to exist, the action is moot and [the] court lacks jurisdiction to adjudicate the matter."[28] "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."[29] For claims seeking declaratory judgment, such as Plaintiffs' claims in this consolidated action, the district court must "look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[30] The party asserting that the controversy is moot "bears the burden of coming forward with the subsequent events that have produced that alleged result."[31]

### Plaintiffs' claims are moot

Defendants argue that Plaintiffs' claims are moot because the BLM suspended the March and December 2018 Leases pending additional environmental analysis under NEPA.[32] Defendants maintain that no further relief can be granted on Plaintiffs' claims because the BLM will issue new final leasing decisions.[33] These decisions will either: (1) lift the suspension

---

[27] *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

[28] *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008) (internal quotations and punctuation omitted).

[29] *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000).

[30] *Chihuahuan Grasslands All.*, 545 F.3d at 891.

[31] *Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009) (internal quotations omitted).

[32] Motion to Dismiss at 8-14.

[33] *Id*. at 5.

without modification; (2) lift the suspension with modifications; or (3) terminate the March and December 2018 Leases.[34]

Plaintiffs argue that their claims are not moot because the additional environmental analysis will only address a portion of the alleged NEPA violations.[35] Plaintiffs maintain that their other claims will not be impacted because Defendants may still be directed to reconsider the leasing decisions in light of the other alleged statutory and regulatory violations.[36]

The circumstances in this consolidated action are similar to those in recent case from this District, *S. Utah Wilderness All. v. United States Dep't of the Interior* ("*SUWA*").[37] In *SUWA*, the plaintiffs raised challenges under NEPA and FLPMA to the BLM's decision to issue four oil and gas leases in November 2011, and the BLM's decision to approve a project on the leased parcels.[38] The BLM however suspended its approval of the project pending additional NEPA-complaint review, which would result in the issuance of new final decisions regarding the project.[39] The defendants argued that the suspension mooted the plaintiffs' claims relating to the project.[40] The district court agreed concluding that because the BLM's original decisions were "no longer operative, the alleged injury to [the p]laintiffs . . . evaporated."[41] The suspension in favor of new final decisions provided a new regulatory context which "may or may not allow for further development on the leased parcels and may or may not contain modified or new

---

[34] *Id.*; Hoffman Declaration ¶ 4.

[35] Plaintiffs' Joint Response to Defendants' Motion to Dismiss ("Response") at 9, docket no. 43, filed. Sept. 19, 2019.

[36] *Id.* at 10-13.

[37] 250 F.Supp.3d 1068 (D. Utah 2017).

[38] *Id.* at 1072-73.

[39] *Id.* at 1077.

[40] *Id.* at 1086.

[41] *Id.* at 1087.

conditions of approval."[42] Therefore, "there [existed] no substantial controversy of sufficient immediacy and reality regarding either the process that created the original [decisions] or their content."[43]

The analysis in *SUWA* is persuasive and directly applicable to Plaintiffs' claims in this consolidated action. The March and December 2018 Leases are suspended pending further environmental analysis under NEPA.[44] And no lease operations or any ground-disturbing activity will occur on the leased parcels during the suspension.[45] The suspension impacts all of Plaintiffs' claims because the environmental analysis "will undoubtedly include . . . at least a reevaluation of existing data from other studies, as NEPA requires [the] BLM to 'consider *every* significant aspect of the environmental impact of a proposed action.'"[46] The BLM will also issue new final decisions regarding the March and December 2018 Leases.[47] These decisions will arise from a different regulatory context than the violations alleged in Plaintiffs' claims. And it is uncertain what form these decisions will take. The new decisions may lift the suspension with or without modification, or may terminate the March and December 2018 Leases.[48] Under these circumstances, no substantial controversy of sufficient immediacy and reality exists regarding Plaintiffs' claims. Therefore, Plaintiffs' claims are moot.

---

[42] *Id.*at 1087 (internal quotations omitted).

[43] *Id.*

[44] Hoffman Declaration ¶ 3.

[45] *Id.*

[46] *SUWA*, 250 F.Supp.3d at 1090 (quoting *Citizens' Comm. to Save Our Canyons v. United States Forest Serv.*, 297 F.3d 1012, 1021 (10th Cir. 2002); citing 42 U.S.C. § 4332(2)(C)(i)-(ii)) (emphasis in original).

[47] Hoffman Declaration ¶ 4.

[48] *Id.*

**The voluntary cessation exception to the mootness doctrine does not apply**

Plaintiffs argue that their claims may still proceed because the voluntary cessation exception to the mootness doctrine applies.[49] "This exception is based on the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."[50] "In other words, this exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct."[51] "Voluntary actions may, nevertheless, moot litigation if two conditions are satisfied: (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."[52] "Voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."[53]

"The party asserting mootness bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again."[54] "In practice, however, [the] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case."[55] "[T]he withdrawal or alteration of administrative policies can [therefore] moot an attack on those policies.'"[56] "And the mere possibility that an

---

[49] Response at 13-18.

[50] *Chihuahuan Grasslands All.*, 545 F.3d at 892 (internal quotations omitted).

[51] *Id*.

[52] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (internal quotations omitted).

[53] *Id*. (internal quotations omitted).

[54] *Id*. at 1116 (internal quotations omitted).

[55] *Id*.

[56] *Id*. at 1117 (internal quotations omitted).

agency might rescind amendments to its actions or regulations does not enliven a moot controversy."[57] "A case ceases to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency."[58]

Defendants have met their burden establishing that the violations alleged in Plaintiffs' claims cannot reasonably be expected to start up again. "[G]overnment self-correction . . . provides a secure foundation for mootness so long as it seems genuine."[59] There is no argument or suggestion that the BLM suspended the March and December 2018 Leases to defeat jurisdiction in this consolidated action or to avoid an adverse judgment. Rather, the suspension appears to be "entirely corrective—a tacit acknowledgement of potential deficiency"[60] in the environmental analysis for the March and December 2018 Leases.[61] The March and December 2018 Leases will also be reevaluated in light of the additional environmental analysis and the BLM will issue new final leasing decisions.[62] "As a result, the 'precise issue' that Plaintiffs seek to adjudicate . . . 'is no longer extant' and will only recur in the context of an entirely new decision[-]making process informed by an entirely new [environmental] analysis."[63]

Defendants have also met their burden establishing that events have completely and irrevocably eradicated the effects of the violations alleged in Plaintiffs' claims. Plaintiffs argue that harm and injury still exist despite the suspension of the March and December 2018 Leases because Defendants continue to rely on the original environmental analysis when making other

---

[57] *Id.* (internal quotations omitted).

[58] *Id.* (internal quotations omitted).

[59] *Brown v. Buhman*, 822 F.3d 1151, 1167-68 (10th Cir. 2016) (internal quotations omitted).

[60] *SUWA*, 250 F.Supp.3d at 1090.

[61] Hoffman Declaration ¶¶ 3-4.

[62] Hoffman Declaration ¶ 4.

[63] *SUWA*, 250 F.Supp.3d at 1090-91 (quoting *Rio Grande Silvery Minnow*, 601 F.3d at 1119).

leasing decisions.[64] However, any such harm or injury is not relevant to this consolidated action. Defendants' other leasing decisions are not the subject of this consolidated action. Plaintiffs also argue that the mere existence of the March and December 2018 Leases causes harm, regardless of whether leasing operations or ground-disturbing activity is occurring.[65] But the evidentiary support for this argument lacks foundation, is speculative, and relies on hearsay.[66]

      Defendants have demonstrated that no lease operations or any ground-disturbing activity will occur during the suspension of the March and December 2018 Leases.[67] Although the BLM may lift the suspension without modification,[68] there is no certainty that the BLM will do so. This is one potential outcome following completion of the additional environmental analysis.[69] It is speculative to assume that this outcome is more likely to occur than other possible outcomes, such as termination of the March and December 2018 Leases. A "theoretical possibility . . . alone is not sufficient to warrant application of the [mootness doctrine's] voluntary-cessation exception."[70] Regardless, even if the BLM lifts the suspension without modification, the decision will arise from a new decision-making process informed by the additional environmental analysis. The basis for Plaintiffs' claims and the framework for assessing the BLM's decisions will be fundamentally altered.[71]

---

[64] Response at 16-17.

[65] *Id*. at 17-18.

[66] Declaration of Josh Ewing ¶¶ 10-11, docket no. 43-4, filed Sept. 19, 2019; Declaration of Neal Clark ¶¶ 11-14, docket no. 43-5, filed Sept. 19, 2019; Declaration of Jeremy Lynch ¶¶ 10, 12, 14, 16, docket no. 43-6, filed Sept. 19, 2019.

[67] Hoffman Declaration ¶ 3.

[68] *Id*. ¶ 4.

[69] *Id*.

[70] *SUWA*, 250 F. Supp. at 1091 (internal quotations omitted).

[71] *Id.* at 1091 n.9.

Under these circumstances, the violations alleged in Plaintiffs' claims cannot reasonably be expected to start up again, and events have completely and irrevocably eradicated the effects of the alleged violations. Therefore, the voluntary cessation exception to the mootness doctrine does not apply.

Because Plaintiffs' claims are moot and the voluntary cessation exception to the mootness doctrine does not apply, Defendants' Motion to Dismiss[72] is GRANTED.

## ORDER

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss[73] is GRANTED. Plaintiffs' complaints[74] in this consolidated action are DISMISSED without prejudice.

The Clerk is directed to close the case.

Signed March 2, 2020.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[72] Docket no. 40, filed Aug. 8, 2019.

[73] Docket no. 40, filed Aug. 8, 2019.

[74] FCM Complaint, docket no. 32, filed May 31, 2019; SUWA Complaint, docket no. 26, filed May 6, 2019.